STATE of Missouri, Plaintiff–Respondent,

v.

Kenneth VANZANDT, Defendant–Appellant.

Kenneth VANZANDT, Plaintiff–Appellant,

v.

STATE of Missouri, Defendant–Respondent.

Nos. 15759, 17235.

Missouri Court of Appeals, Southern District, Division Two.

May 29, 1991.

Raymond L. Legg, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

1. References to statutes are to RSMo 1986.

PARRISH, Presiding Judge.

Kenneth Vanzandt (defendant) appeals from judgments of the Circuit Court of Lawrence County. He appeals a judgment of conviction, following a jury trial, of assault in the first degree in which he was charged with and found guilty of inflicting serious injury on the victim in the course of committing that offense. § 565.050.[1] He was tried and sentenced as a persistent offender. § 558.016.3. Defendant filed a post-conviction motion pursuant to Rule 29.15 that was overruled following an evidentiary hearing. He also appeals the judgment that overruled that motion. Defendant's appeals were consolidated as required by Rule 29.15(1). Both judgments are affirmed.

Defendant presents four points on appeal. The first three are directed to his criminal case. The fourth is directed to his Rule 29.15 motion. Neither of the points directed to the appeal of defendant's criminal case were included in his motion for new trial. A review of those points reveals that they do not pose "questions of jurisdiction of the court over the offense charged, questions as to whether the indictment or information states an offense," nor questions presented by motion for judgment of acquittal as authorized by Rule 27.07. They, therefore, were not preserved for appellate review. Rule 29.11(d). *See State v. McWilliams*, 370 S.W.2d 336, 338 (Mo. 1963). Defendant has acknowledged that the points were not preserved and has requested that they be reviewed as allegations of "plain error."

"[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. However, as pointed out in *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983):

The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Davis*, 566 S.W.2d 437, 447 (Mo. banc 1978). Existence or nonex-

istence of plain error must be determined from an examination of the particular facts and circumstances of each case. *State v. Miller,* 604 S.W.2d 702, 706 (Mo. App.1980).

The defendant bears the burden of proving that an alleged error is of such magnitude that it constitutes plain error. *State v. Hubbard,* 659 S.W.2d 551, 556 (Mo.App. 1983). The assertion of plain error places a much greater burden on a defendant than when he asserts prejudicial error. *Id.*

A defendant must not only show that prejudicial error resulted, he must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *State v. Miller,* 604 S.W.2d 702, 705–06 (Mo.App. 1980). Even with these guideposts in mind, no rigid formula exists for determining whether plain error occurred. Rather the question must be determined "on a case to case basis and rebalanced each time against the particular facts and circumstances of each case." *Miller, supra,* at 706.

*Id.* Whether to apply the plain error rule is a matter of discretion by the appellate court. *State v. Tyler,* 622 S.W.2d 379, 383 (Mo.App.1981). If guilt is established by overwhelming evidence, it is not an abuse of discretion to refuse to invoke plain error review. *State v. Hubbard, supra.*

These are the parameters in which defendant's first three points on appeal are considered. The facts,[2] for purposes of determining whether plain error review should be granted, viewed in the light most favorable to the verdict rendered in defendant's criminal case are as follows.

Defendant left the home of Kenneth Cooper. He was accompanied by Cooper and a fifteen-year old girl Cooper was dating, Hazel Cross. Defendant and Cooper had been drinking beer. Defendant had also taken small, football-shaped pills. The three were in an automobile that was traveling in a southerly direction on Highway 37 in Barry County. Defendant was driving. Hazel Cross and Kenneth Cooper were sitting in the front seat with defendant—Hazel sat in the middle. Defendant's automobile overtook, but did not pass, a truck, a tractor-trailer unit, that was going the same direction as defendant. The truck was driven by Virgil Eckhardt.

Eckhardt saw defendant's car approaching. He thought the car struck the back of his truck. He attempted to pull the truck onto the shoulder of the highway, but stopped short of doing so. He thought he saw the headlights from defendant's car at a location that would interfere with his effort to pull onto that shoulder. Eckhardt stopped his truck partially on the highway and partially on his right-hand shoulder. He got out of the truck, taking a device used to strike tires to determine whether they were flat, a "tire buddy." The tire buddy had a wooden handle. Eckhardt put it in his right, rear pocket "for protection." He walked toward the back of the truck where defendant's car had stopped.

Defendant had gotten out of his car after first removing a knife that he was carrying in his boot. Defendant approached Eckhardt, knife in hand. Defendant told Eckhardt, with the use of some profanity, that he had stopped the wrong car. Eckhardt backed away. Defendant continued to move forward and stabbed Eckhardt in the stomach. Eckhardt hit defendant's hand with the tire buddy in an attempt to dislodge the knife. Defendant stabbed Eckhardt four more times. Sometime during the skirmish, defendant had taken the tire buddy from Eckhardt and hit Eckhardt with it above the right eye.

Hazel remained in the car. Cooper had gotten out of the passenger side. As the altercation moved toward the front of Eck-

---

**2.** The transcript in case number 15759 has numerous places where the typist has inserted "(Inaudible)." This practice is observed with alarming frequency in cases where the verbatim record at trial is made by a recording device rather than a court reporter. Fortunately, in this case, the passages in which the "(Inaudi-

ble)" designation appears are not parts of testimony or statements by the trial judge or counsel that are instrumental to the issues on appeal. In the event increased use (or continued use) of recording devices in cases likely to be appealed is considered, the shortcomings of those devices should be recognized.

hardt's truck, Cooper got back inside the car. Hazel moved to the driver's side of the car and drove it along side defendant and Eckhardt. Defendant got into the car on the driver's side and drove it away. After entering the car, defendant asked Hazel and Cooper how many times they had seen him stab Eckhardt. Cooper told him, "About three times."

When defendant got back inside the car, he placed the knife on the visor. Blood was visible on the knife. He later moved the knife to the rear view mirror. Defendant had part of the tire buddy—it had been broken. He gave that part of the tire buddy to Cooper and told Cooper to throw it out the window. Cooper did as told.

Defendant drove to his mother's house where his car became stuck in a ditch. A deputy sheriff observed defendant and his passengers trying to move the car. The deputy sheriff approached the car and told defendant to get out of the car. After some delay in responding to the deputy sheriff's request, defendant complied. He was then arrested.

■ Defendant's first point on appeal seeks plain error review of the trial court's failure to *sua sponte* disqualify the attorney who represented defendant at trial as a result of remarks made during voir dire. Defendant complains that his attorney in the criminal case "stated, during voir dire, that he and his partners served 'intermittently between us' as the city attorney for Monett, Missouri"; that this constituted a "conflict of interest due to counsel's prosecutorial responsibilities."

Having reviewed the transcript of the criminal trial, this court declines to invoke plain error review as to defendant's first point on appeal. However, it is appropriate to note, as aptly raised in respondent's brief, "[t]he mere existence of a possible conflict of interest does not preclude effective representation." *Johns v. State*, 741 S.W.2d 771, 777 (Mo.App.1987). A claim of conflict of interest is not cognizable on the basis of speculation. *State v. Abbott*, 654 S.W.2d 260, 274 (Mo.App.1983). Defendant's first point is denied.

■ Defendant's second point on appeal contends that plain error occurred by the trial court's "allowing the state to present evidence that [defendant] had taken 'some little football-shaped pills' and in allowing the prosecuting attorney, during closing argument, to argue that on the day of and prior to the commission of the charged offense, [defendant] had been 'pilling it up.'" Defendant argues that this resulted in an improper assertion that defendant had "a bad character and propensity to commit crimes."

The request that this court grant plain error review of defendant's second point is denied. Defendant's guilt was established, as demonstrated by the facts stated, by overwhelming evidence. There is no showing of manifest injustice or miscarriage of justice.

■ Defendant's third point on appeal is directed to the trial court's ruling on an objection made to a question the prosecuting attorney posed to defense witness, Dr. Jerald Johnson. Defendant argues that the overruling of the objection was plain error. The trial transcript reflects the following:

REDIRECT EXAMINATION BY MR. WOODS [defendant's attorney]:

Q. Do you recall the date of the last time before this date that you treated him, Doctor?

A. No sir, I didn't bring those records with me. It was some time—

Q. Was it over a year, or six months?

A. I would think 1982, but I'd have to check my records.

MR. WOODS: No further questions.

RECROSS–EXAMINATION BY MR. LEWRIGHT [prosecuting attorney]:

Q. Do you recall where?

MR. WOODS: If the Court please, I'll object to where.

MR. LEWRIGHT: Your Honor, he asked for the date, and he opened it up.

THE COURT: I'll overrule the objection. You may answer, if you can, Doctor. Where?

THE WITNESS: It was at the Barry County jail.

Defendant argues that the doctor's response inferred "that [defendant] had been previously incarcerated for a prior, uncharged crime."

Considering the entire record on appeal and the fact that defendant's guilt was established by overwhelming evidence, no manifest injustice or miscarriage of justice appears. Defendant's third point is denied.

■ Defendant's fourth point on appeal is directed to the judgment by which the motion court overruled defendant's Rule 29.15 motion. Defendant alleges that the motion court erred in not granting relief because he received ineffective assistance of trial counsel. Defendant asserts that his trial counsel was ineffective, "when defense counsel knew that [defendant] was taking Xanax under the supervision of a physician and did not introduce such evidence to rebut the prejudicial effect of the state's evidence that [defendant] was taking football-shaped pills on the day of the offense and 'pilling it up.'"

Defendant raises this issue for the first time on appeal. "Appellate court review of a motion under Rule 29.15 is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j)." *Hayes v. State*, 774 S.W.2d 886, 888 (Mo.App.1989). Since defendant's complaint was not presented to the motion court, that allegation is not cognizable on appeal. *Id.* Defendant's fourth point is denied.

The judgment of conviction of the trial court and the judgment of the motion court overruling defendant's Rule 29.15 motion are affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.